UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ALONSO VEGA,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>FRANCISCO JAQUEZ,<br><br>　　　　　　　Respondent. | No. 2:10-cv-0398 JAM AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the third amended petition, ECF No. 33, which presents three claims challenging petitioner's 2007 conviction for second degree murder and possession of a firearm by a felon. Respondent has answered, ECF No. 40, and petitioner has filed a traverse, ECF No. 43.

BACKGROUND

Petitioner and co-defendant Zachary Beck were charged in San Joaquin County Superior Court with the murder of nineteen year old Jennifer Holland. Petitioner was also charged with discharging a firearm and being a felon in possession. Petitioner and co-defendant Beck were tried jointly.

////

////

1

Trial

*Prosecution case*

The prosecution presented the following evidence:

On the morning of August 3, 2006, Jennifer Holland's body was found in an asparagus field in San Joaquin County. She had been shot in the head and her body burned. Evidence showed that she had been dumped in the area sometime after 10:00 p.m. the night before.

That evening police searched the Finck Road ranch property where Jennifer sometimes stayed with friends. Several people were present. There were a couple of trailers and a run-down house on the property; the police also discovered a methamphetamine lab. Conrado Zavala lived in one of the trailers, and Alfredo Lopez sometimes stayed in his trailer. Several witnesses indicated that Conrado was primarily responsible for the meth lab. When police officers told Conrado that Jennifer had been killed, he attempted to flee but was apprehended. Despite his attempt to flee, Conrado did not thereafter refuse to answer questions and officers found him to be forthcoming and truthful.

The police interviewed Alfredo.[1] He and Jennifer had dated for a short time. She had stayed at Conrado's trailer for a while in July. Jennifer had abruptly "dumped" Alfredo shortly before her murder, and had gotten back together with petitioner. (According to Jennifer's brother, she and petitioner had dated about a year earlier.) Alfredo last saw Jennifer on July 31 outside a local store, where she was standing with petitioner until she got in a car and drove off with Conrado. On the morning of August 2 Alfredo telephoned Jennifer to remind her about a court date, and she said that unspecified friends were giving her a ride. Alfredo made five or six other phone calls to Jennifer later that day, but she neither answered nor returned his calls.

Angela Galli had spent the night of August 2 at the trailer talking and smoking methamphetamine with Alfredo. According to Angela, she and Alfredo were the only ones in the trailer that night. According to Alfredo, Conrado was also there but left in the early hours of

---

[1] Presumably because some of the witnesses and other involved parties were minors at the time, the California Court of Appeal used first names in discussing the evidence. For the sake of consistency when discussing that court's evaluation of the evidence, the undersigned does the same.

2

1   August 3.  At some point during that night while Angela was outside the trailer, Alfredo saw
2   Conrado bring in a .45-caliber semiautomatic handgun.  Officers found such a gun in the trailer.
3         Based on information obtained from Conrado, Alfredo and Angela, police also searched
4   the home of 17-year old Zachary Beck on Tracy Blvd., a rural property where petitioner had been
5   staying with Beck.  Maria Jimenez, who had recently begun dating petitioner, said that cushions
6   which had been on Beck's couch the week before were missing on August 2.  Beck told her he
7   had spilled Kool Aid on them.  Maria also noticed what she thought was a fresh stain on the
8   carpet.  During the search, officers noticed what appeared to be bloodstains or smears on the
9   frame of the couch, on the carpet, and on walls and doorframes in the kitchen and laundry room.
10  Outside the modular home, the officers found a black plastic trash bag containing a sock, a shirt, a
11  towel and a rag that all appeared to be bloodstained.  In a nearby shed, another trash bag was
12  found containing a woman's small purse with a $50 bill inside, Jennifer's court citation for her
13  August 2 appearance, three bloodstained rags, and a bloodstained pillow case.  A can of camp
14  fuel was found next to the shed.  About 20 feet from the house was a dumpster that contained the
15  two cushions missing from the living room couch.  On August 4, Maria helped petitioner gather
16  his belongings from Beck's house.  Beck's landlord testified that Beck had been told prior to
17  Jennifer's murder that he was not allowed to have friends living with him.
18        Jennifer had checked into an Extended Stay Motel in Tracy on August 1 with Conrado.
19  They registered for thirty days, and Conrado paid for seven days in advance pursuant to motel
20  policy.  Various acquaintances of the two agreed that Conrado and Jennifer had not rented the
21  room as a couple; Conrado was simply helping Jennifer out because she needed a place to stay,
22  and he expected to use the room himself with another girl.  A motel clerk saw Jennifer with
23  Conrado only at check-in.  He saw Jennifer at the motel with petitioner more than once, however.
24  Jennifer's brother Michael last saw her on the morning of August 2 in the motel parking lot.  She
25  was with a Hispanic man who spoke good English and who was not petitioner.
26        Jennifer's blood was found in the trunk of petitioner's blue Honda.  The interior of the
27  Honda bore petitioner's fingerprints and those of Maria Jimenez; additional prints were not
28  useable for identification purposes.  The Honda's tires were visually consistent with tracks found

in the asparagus field near her body. A second set of tracks was consistent with a Sebring Chrysler belonging to Cynthia Goddard, which had been at the Finck Road property on August 3. (Cynthia had been there with her boyfriend Belen Zamora, an associate of Conrado and Alfredo.) Jennifer's blood was confirmed on the couch at Beck's house, the missing couch cushions, the carpet and a comforter found in the house. Cell phone records showed that Jennifer and petitioner spoke several times on August 1 and 2. The last outgoing call Jennifer made was to petitioner on the morning of August 2.

The gun used to kill Jennifer, almost certainly a .38 revolver, was never recovered. A beer can found near her body bore traces of male DNA that did not come from petitioner or Beck; it was not tested against Conrado Zavala or Alfredo Lopez.

*Defense Case*

The defense maintained that Conrado had killed Jennifer. When the police arrived at the Finck Road property on August 3, Conrado fled because, as he told Officer Ramos upon his apprehension, "I don't want to be implicated in no homicide." According to Alfredo, Conrado had told him that he was upset because Jennifer was using him for drugs. Conrado had once said he would kill anyone who stole from him. Alfredo testified that Conrado had a reputation as someone not to "mess with."

At trial, Conrado asserted his Fifth Amendment right and refused to answer almost every question, notwithstanding having been offered a limited immunity deal. Outside the jury's presence, the trial court held Conrado in contempt and sentenced him to five days in jail. The defense argued to the jury that Conrado's refusal to testify indicated his guilt.

*Outcome*

On May 4, 2007, the jury found petitioner not guilty of first degree murder but guilty of second degree murder. The jury found not true the allegation that petitioner had personally discharged a firearm. Petitioner was found guilty on the felon in possession charge. Co-defendant Beck was acquitted on all counts. On June 25, 2007, petitioner was sentenced to an aggregate term of fifteen years to life, plus eight months.

////

Post-conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal for the Third Appellate District affirmed the conviction in an unpublished opinion filed December 31, 2008. Lodged Doc. 4. Petitioner's timely petition for review was denied by the California Supreme Court on March 31, 2009. Lodged Doc. 6.

On January 26, 2010, petitioner filed a petition for writ of habeas corpus in the San Joaquin County Superior Court. Lodged Doc. 7. That petition, which alleged ineffective assistance of trial counsel, was denied on March 4, 2010, on grounds that petitioner had failed to include copies of reasonably available documentary evidence. Lodged Doc. 8.

On February 9, 2010, while his superior court petition was pending, petitioner filed a habeas petition in this court. ECF No. 1.[2] Because the petition contained one exhausted claim and two unexhausted claims, the court ordered petitioner to file either a motion to stay or an amended petition presenting only his exhausted claim. ECF No. 6. Petitioner sought a stay of the proceedings pending further exhaustion, which was granted on June 1, 2010. ECF No. 9 (order administratively staying the case).

On April 21, 2011, petitioner filed another habeas petition in the San Joaquin County Superior Court. Lodged Doc. 9.[3] It was denied on July 6, 2011 in a written order. Lodged Doc. 10. Petitioner next filed a habeas petition in the California Court of appeal, Lodged Doc. 11, which was denied without comment or citation on December 15, 2011, Lodged Doc. 12. Petitioner thereafter filed a habeas petition in the California Supreme Court on February 6, 2012. Lodged Doc. 13. That petition was denied without comment or citation on May 23, 2012. Lodged Doc. 22.

During the midst of his state court proceedings, on December 9, 2011, petitioner filed a

---

[2] The petition was signed by petitioner on January 19, 2010, and the proof of service is dated February 1, 2010. Id. By operation of the "mailbox rule" applicable to the pleadings of pro se prisoners, the latter date is the likely constructive filing date of the petition. See Houston v. Lack, 487 U.S. 266 (1988). Because there is no assertion of untimeliness, however, the court refers above to the docketing dates as filing dates for convenience.

[3] Petitioner also submitted a copy of this petition to this court, where it was first filed in error as a First Amended Petition and subsequently ordered stricken. See ECF Nos. 12, 13.

5

Second Amended Petition in this court. It included the three claims petitioner was pursuing in state court but omitted the one claim that had been previously exhausted on direct appeal. On respondent's motion, the claim of ineffective assistance of appellate counsel was dismissed with prejudice as untimely. ECF No. 32 (Findings and Recommendations), ECF No. 35 (order adopting Findings and Recommendations). Petitioner was granted leave to file a third amended petition.

The operative Third Amended Petition, ECF No. 33, contains the insufficiency of the evidence claim that was exhausted on direct appeal and the Confrontation Clause and ineffective assistance of trial counsel claims that were exhausted in state habeas during the stay of proceedings in this court. Respondent has answered these claims on the merits, asserting no procedural defenses. ECF No. 40.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the

1  state court's decision is more likely." Id. at 785.

2  The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

7

DISCUSSION

I. Claim One: Sufficiency of the Evidence

A. Petitioner's Allegations

Petitioner contends that there was insufficient evidence presented at trial to sustain his second-degree murder conviction. As he did on direct appeal, petitioner emphasizes that the jury found him not guilty of personally using a handgun in the commission of the offense. He contends that the entirely circumstantial case against him – based on his residency with Beck, his acquaintance with Holland, and the presence of her blood in the trunk of his car – is insufficient to sustain the necessary conclusion that he aided and abetted the murder. He argues that the evidence supports at most a conclusion that the killing happened at Beck's house and that petitioner's car was used to dispose of the body, but not that he was personally involved. He points to the absence of forensic evidence directly linking him to the homicide or to any specific act that facilitated the homicide, and to the absence of motive evidence. Petitioner also contends that "there was evidence of some one [sic] with far greater motive to kill Jennifer, Conrado Zavala." ECF No. 33 at 18.

B. The Clearly Established Federal Law

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Id. at 326; see also Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005). In order to grant a writ of habeas corpus under AEDPA, the court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Juan H., 408 F.3d at 1274. The federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as

defined by state law. Jackson, 443 U.S. at 324 n.16; Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004).

### C. The State Court's Ruling

Because the California Supreme Court denied review without comment, this court "looks through" the denial to the opinion of the California Court of Appeal. See Ylst v. Nunnemaker, 501 U.S. 797 (1991). As the last reasoned state court decision on the merits, the opinion on appeal is the state court adjudication that must be reviewed for reasonableness under 28 U.S.C. § 2254(d). Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012). The appellate court ruled as follows:

> In reviewing the sufficiency of evidence in a criminal appeal, we must view the evidence in the light most favorable to the judgment and determine whether any rational trier of fact could have found the elements of the charged offense beyond a reasonable doubt. (People v. Johnson (1980) 26 Cal.3d 557, 576-578; People v. Guerra (1985) 40 Cal.3d 377, 385.)
>
> Applying that standard here, we conclude there was sufficient evidence that defendant killed Jennifer or aided and abetted her killing and that he did so with malice. It is unnecessary to repeat the lengthy set of facts we have just detailed [above]. A look at the highlights will more than suffice.
>
> As for the killing, the forensic evidence at the Tracy Boulevard property was overwhelming that Jennifer had been shot on the living room couch of defendant's temporary residence and placed in defendant's car, a car the evidence showed that only defendant drove. Aside from all the bloodstain evidence, tire track evidence linked defendant's car to the site of Jennifer's dumped body. Furthermore, the residence appeared to have been cleaned after the killing.
>
> Defendant and Jennifer were intimately connected in a chronology leading up to the murder. About a year prior to the murder, they had been in a romantic relationship. Just days prior to the murder, they were in touch by cell phone, and had been seen together at the local market and at the Extended Stay Motel. Alfredo essentially testified that defendant and Jennifer were once again an item just before the murder. On the apparent day of the murder (August 2), there were calls made between Jennifer's cell phone and defendant's in the morning. Those calls were the last ones ever made from Jennifer's phone. Near in time to the latter two of these two calls, Jennifer had also told Alfredo when he phoned her that she was getting a ride to her August 2 court appearance from "friends." After her August 2 court appearance, she was never heard from again.
>
> When defendant's new romantic interest, Maria, showed up at

9

defendant's residence on August 2nd at 5:00 or 6:00 p.m., she noticed for the first time that the cushions on the living room couch were gone and that there were obvious stains on the carpet near the couch. Defendant's roommate, Beck, provided an innocent, but untrue, explanation for the missing cushions (a Kool-Aid spill). After the killing, defendant enlisted Maria's help to collect his belongings, as he needed to find another place to stay.

As for malice, the manner of killing, along with the manner of disposing of the body, supports such a finding. The killing was accomplished by a close gunshot wound to the top left of Jennifer's head that went downward through her brain into her right cheek. This indicated an intent to kill. The body was disposed of by burning it with a flammable accelerant in an apparent effort to forestall identification (such an accelerant, a can of camp fuel, was found outside defendant's residence among a plethora of forensic evidence).

Finally, defendant contends that since the jury found he did not discharge a handgun during the murder, the jury must have found he was only an aider and abettor. This point is not well taken. Because inconsistent jury findings frequently result from leniency, mercy or confusion, the law makes clear that a decision on each count or enhancement must stand on its own, and a verdict on one has no bearing on any other. (§ 954 [stating in part, "An acquittal of one or more counts shall not be deemed an acquittal of any other count"]; People v. York (1992) 11 Cal.App.4th 1506, 1510; People v. Lopez (1982) 131 Cal.App.3d 565, 570-571; People v. Pahl (1991) 226 Cal.App.3d 1651, 1656-1657.)

We conclude the evidence is sufficient to support defendant's second degree murder conviction.

Lodged Doc. 4 at 9-12.

### D. Objective Reasonableness Under § 2254(d)

The state court applied the correct standard, and applied it reasonably. The evidence strongly indicated that Jennifer was killed in this house where petitioner was staying, and that petitioner's car was used to transport her body to the field where it was dumped. Petitioner was the last person known to have been in contact with Jennifer before her death. These facts do not compel a guilty verdict. The question on post-conviction review, however, is not whether the reviewing court is persuaded beyond a reasonable doubt but whether any rational juror could be so persuaded when all inferences are drawn in favor of the prosecution. Jackson, 443 U.S. at 319; Juan H., 408 F.3d at 1274-75.

The absence of motive evidence does not affect the due process analysis, because motive

1   is not an element of the offense.  See Chein, 373 F.3d at 983 (Jackson review focuses on elements
2   of offense as defined by state law); see also People v. Valdez, 32 Cal. 4th 73, 144 (2004) (motive
3   is not an element of murder).

4       Similarly, because the jury was not required to agree unanimously on a particular theory
5   of second degree murder liability, specific proof of aiding and abetting was not required.
6   Moreover, the jury's conclusion that petitioner's personal use of a firearm had not been proved
7   beyond a reasonable doubt does not mean that the jury affirmatively found he had played a role
8   other than that of shooter.  Even if the verdicts could be considered inconsistent, the state's
9   court's ruling on the permissibility of inconsistent verdicts accords with clearly established
10  federal law.  See Dowling v. United States, 493 U.S. 342, (1990) (inconsistent verdicts are
11  constitutionally tolerable) (citing Standefer v. United States, 447 U.S. 10, 25 (1980)).

12      Petitioner is correct that the case against him was circumstantial, but due process does not
13  prohibit conviction on the basis of circumstantial evidence.  The only question is whether there
14  was evidence from which any rational trier of fact could have drawn the inferences necessary to
15  support the conviction.  Jackson, 443 U.S. at 319, 326; see also United States v. Del Toto-
16  Barboza, 673 F.3d 1136, 1145 (9th Cir. 2012) (Jackson satisfied where "there was a plausible
17  chain of logic to support the jury's verdict").

18      The inferences necessary to support the verdict in this case are no weaker or less rational
19  than those in Cavazos v. Smith, 132 S.Ct. 2 (2011) (per curiam), in which the Supreme Court
20  overruled the Ninth Circuit's grant of habeas relief on Jackson grounds.  Smith was a "shaken
21  baby" case in which there was no evidence that the petitioner, the deceased baby's grandmother,
22  had mistreated the baby.  The medical opinion testimony on which the conviction rested was
23  unsupported by objective physical evidence at trial, and was discredited as junk science in post-
24  conviction proceedings.  The essential inference in Smith went to the cause of death, while in this
25  case it goes to petitioner's identity as one of the perpetrators.  However, in both cases the jury
26  was presented with circumstantial evidence from which the necessary inference, however weak,
27  could permissibly be drawn.  As in Smith, therefore, the state court's affirmance of petitioner's
28  conviction commands deference under § 2254(d).

11

Because the California Court of Appeal did not unreasonably apply <u>Jackson</u> and <u>Winship</u> to the facts of the case, relief is unavailable.

II.     <u>Claim Two: Fair Trial and Confrontation Rights</u>

    A. <u>Petitioner's Allegations</u>

Petitioner alleges that the trial court violated his Fifth and Sixth Amendment rights to a fair trial and to confront witnesses by permitting the jury to consider Conrado Zavala's statements after he asserted his right not to testify and refused to answer questions despite an offer of immunity.

The relevant portions of the trial record reflect the following: On April 12, 2007, Conrado Zavala's attorney reported outside the presence of the jury that Zavada was unwilling to testify for the prosecution. The prosecutor offered use immunity. 3 RT 666. The following colloquy ensued:

> THE COURT: Mr. Zavala, the district attorney is going to give you use immunity. That means that anything you say cannot be used against you. Do you understand that?
>
> THE WITNESS: Yes.
>
> THE COURT: And having that in mind, are you willing to answer questions about anything that happened during August – the week of August 2nd, 2006, in the area of Finck Road or are you going to be willing to answer questions?
>
> THE WITNESS: No, because – no, because I don't know anything about that. It has nothing to do with my case.[4] I don't know these people. And I don't have anything to do with this case.
>
> THE COURT: Are you – so, well, the question is are you going to plead the Fifth Amendment or are you going to testify as to what, if anything, you know about it?
>
> THE WITNESS: I don't know anything. I don't know anything about it. I don't know them. I don't know them.
>
> THE COURT: You are not going to plead the Fifth Amendment, is that correct?
>
> MR. CASENAVE: Judge, that's not what he's saying. . . . I talked to him. I don't think he understands. . . . He's not prepared to testify, whether there's immunity or not. I've explained to him

---

[4] Mr. Zavala was facing charges related to the meth lab at the Frick Road property.

what would happen to him if he chose to do that. . . .

3 RT 667-68.

Following further consultation with counsel, the witness reaffirmed his intention to refuse to testify:

> THE WITNESS:  I don't want to testify under – I don't want to testify under whatever they said.  Under the Fifth Amendment.
>
> THE COURT:  All right.  Mr. Zavala, I'm going to order you to testify because you are given immunity.  If you refuse to testify, you can be held in contempt of court and sentenced to five days in jail.  Do you understand that?
>
> THE WITNESS:  Well, no, I can't testify.  I don't know anything about this.
>
> THE COURT:  Are you still indicating that you refuse to testify?
>
> THE WITNESS:  Yes.  I am refusing to testify.

3 RT 671.

Defense counsel stated that he also wished to call Zavala, and asked that the jury be advised of any refusal to testify despite a grant of immunity.  3 RT 675, 806-09.

Mr. Zavala returned to court on April 24.  In the presence of the jury, he testified on direct examination by the prosecutor that he had been living on Finck Road in August of 2006.  He then invoked the Fifth Amendment and refused to answer any further questions.  3 RT 843.  The judge pointed out that he had been given immunity and therefore had no Fifth Amendment right not to testify.  Zavala persisted in his refusal to testify.  Id. at 843-44.  In response to every question, he answered only "I don't want to testify."  Id. at 844-47.  He stated "I don't want to incriminate myself."  Id. at 844.  On cross-examination by petitioner's counsel, Zavala also said only that he did not want to testify.  Id. at 847-50.  Out of the presence of the jury, Zavala was held in contempt.  Id. at 851.  The jury was instructed prior to deliberations that it was entitled to draw a negative inference about a witness who refuses to provide relevant testify when he has no constitutional right not to testify.  4 RT 1279.

B.  The Clearly Established Federal Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

13

1  enjoy the right to . . . be confronted with the witnesses against him." The Confrontation Clause
2  prohibits the admission of testimonial out-of-court statements by non-testifying individuals.
3  Crawford v. Washington, 541 U.S. 36 (2004).  Not all hearsay implicates the core concerns of the
4  Confrontation Clause; the dispositive question is whether the statement is "testimonial."
5  Crawford, 541 U.S. at 51.  Although the Supreme Court declined to provide a precise definition
6  of "testimonial statements," the Ninth Circuit has noted that the examples discussed in Crawford
7  "all involve live out-of-court statements against a defendant elicited by government officer with a
8  clear eye to prosecution." United States v. Cervantes-Flores, 421 F.3d 825, 833-34 (9th Cir.
9  2005), cert. denied, 547 U.S. 1114 (2006).  Confrontation Clause violations are subject to
10 harmless error analysis under Chapman v. California, 386 U.S. 18 (1967).  Delaware v. Van
11 Arsdall, 475 U.S. 673, 684 (1986).

12       C.  The State Court' Ruling

13    The California Supreme Court denied this claim without comment, and no lower court
14 issued a reasoned decision.[5]  In California, the summary denial of habeas relief represents a
15 determination that petitioner failed to state a prima facie case.  Cullen v. Pinholster, 131 S. Ct.
16 1388, 1402 n.12 (2011).  Accordingly, the absence of a prima facie case is the determination that
17 must be reviewed for reasonableness under § 2254(d).  Nunes v. Mueller, 350 F.3d 1045, 1054-55
18 (9th Cir. 2003).

19       D.  Objective Reasonableness Under § 2254(d)

20    Petitioner identifies no testimonial statements by Conrado Zavala that were admitted into
21 evidence.  The undersigned has reviewed the trial transcripts in their entirety, and identifies no
22 Zavala hearsay statement that presents a colorable Crawford claim.  The jury learned from police
23 witnesses that Zavala had initially fled because, in his own words, he didn't "want to be
24 implicated in no homicide."  Even if this were a testimonial statement within the meaning of
25 Crawford (which it almost certainly is not), the statement was a linchpin of petitioner's "Zavala
26 did it" defense and not evidence that was used against him.  Similarly, the defense relied upon

---

[5] The superior court was presented with this claim, see Lodged Doc. 9 at 15-53, but that court's written statement of decision did not address the issue.  See Lodged Doc. 10.

14

Alfredo Lopez's report that Zavala had made statements indicating suspicion of Jennifer Holland and intent to hurt anyone who stole from him. To the extent these statements were considered by the jury, they were not the statements of a witness against petitioner and therefore do not implicate his confrontation rights. The prosecutor introduced no out of court statements by Zavala for their truth. Law enforcement witnesses who interacted with Zavala testified about the course of their investigation but not about substantive statements that Zavala made. Lay witnesses testified about Zavala's conduct, primarily related to his drug business and his connections to the victim and to the defendants, but did not testify to specific out-of-court statements.[6] Certainly no such statements inculpated petitioner or were used against him.

The existence of a testimonial out-of-court statement, admitted into evidence against a defendant without the declarant being subject to confrontation and cross-examination, is the *sine qua non* of a Crawford claim. Without such a statement there can be no prima facie case of a confrontation clause violation. Because petitioner failed to allege any such statement, and because the record contains none, the state court's summary rejection of this claim cannot have been unreasonable.

Moreover, the jury heard Zavala refuse to answer. Defense counsel had the opportunity to directly accuse him of killing Jennifer Holland, and the jury heard him fail to deny it. 3 RT 850. In combination with Zavala's statement to police that he had tried to flee because didn't want to be implicated in a murder, his refusal to testify was powerful defense ammunition. The jury was instructed that it could draw a negative inference regarding Zavala based on his refusal to testify. Accordingly, even if there had been some sort of error in the handling of Zavala's refusal to testify, there is no plausible theory of prejudice to petitioner. See Van Arsdall, 475 U.S. at 684 (harmless error does not require reversal).

For all these reasons, relief is not available on this claim.

---

[6] In his traverse, plaintiff repeats his contention that "the court allowed the prosecutor to elicit from numerous witnesses, hearsay information relayed to them, from Conrdao Solorio-Zavala. . ." ECF No. 43 at 20. Petitioner does not identify or describe any such hearsay statements. More importantly, given that this court's review is governed by § 2254(d), petitioner did not identify any such statements to the California court.

III. Claim Three: Ineffective Assistance of Trial Counsel

A. Petitioner's Allegations

Petitioner alleges that trial counsel (1) failed to investigate generally; (2) pointed to Conrado Zavala as the culprit and Alfredo Lopez as an aider and abettor without evidentiary support; and (3) failed to object to admission of Zavala's testimony and/or prior statements after his invocation of the Fifth Amendment. ECF No. 33 at 24-27.

B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

C. The State Court's Ruling

Because the California Supreme Court denied this claim without comment, this court "looks through" the silent denial to the last reasoned state court decision. See Ylst, 501 U.S. 797. Because the superior court issued the only reasoned decision adjudicating the claim, that is the decision reviewed for reasonableness under § 2254(d). See Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

The superior court ruled as follows:

> This is Petitioner's second habeas petition on grounds of ineffective assistance. . . .
>
> To establish ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant.

16

> (Strickland v. Washington (1984) 466 US 668, 687, 80 L Ed 2d 674, 693, 104 S Ct 2052.) The present petition is devoid of any evidence that trial and appellate counsel fell below an objective standard of reasonableness under prevailing professional norms.
>
> By way of example, the individual Petitioner alleges was the murder given limited use of immunity but still refuse to testify. At trial, defense counsel cross-examined that witness and asked several questions that implicated the witness, including whether he had killed the victim. Under the circumstances, the best defense counsel could do was paint the witness in a bad light. Counsel did so.
>
> Additionally, given the evidence against the Petitioner, as described in the appellate opinion, Petitioner fails to show how his trial and appellate counsel's performance prejudiced him, i.e., that he would have received a more favorable result.
>
> The Petitioner also represented an improper serial and piecemeal presentation of the claims. In re Clark (1993) 5 Cal.4th 750, 774-775. For all of the above reasons, the Petition fails to present a prima facie case and is therefore DENIED.

Lodged Doc. 10.

### D. Objective Reasonableness Under § 2254(d)

The superior court found that no prima facie case of ineffective assistance of counsel had been presented. Because petitioner made no showing of prejudice, this conclusion was not unreasonable. Indeed, it was correct. See Strickland, 466 U.S. at 697 (lack of prejudice fatal to claim).

As in the superior court, petitioner fails to support his bare-bones ineffective assistance claim with any concrete factual allegations identifying what evidence would have been unearthed by further investigation. He identifies no additional information that could have been developed and presented to inculpate Conrado Zavala and Alfredo Lopez. This failure to allege facts essential to a prejudice finding precludes relief in any court, state or federal. See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what [a witness] could have said is not enough to establish prejudice."); Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland test.").

Petitioner's allegations regarding counsel's handling of the Zavala matter also fail to state

a prima facie case of ineffective assistance. Petitioner faults counsel for failing to object to "testimony provided by witness (Zavala) after he invoked his 5th Amendment right to remain silent," ECF No. 33 at 25, but Zavala did not provide any such testimony. Moreover, no prior out-of-court statements of Zavala were offered against petitioner to which counsel might have objected. What counsel did was to use Zavala's refusal to testify in support of the defense theory that Zavala was the perpetrator. In sum, plaintiff identifies no facts that, if true, would support a conclusion that counsel performed unreasonably. And because petitioner was not prejudiced by the jury's consideration of Zavala hearsay, he cannot have been prejudiced by counsel's handling of the matter.

Because petitioner's allegations do not establish a prima facie claim under Strickland, the state court's denial of relief was both reasonable and correct.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-eight days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 8, 2014

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE